**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. 1:22-cr-704 |
| | ) | |
| | ) | |
| PLAINTIFF, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | |
| | ) | MEMORANDUM OPINION |
| | ) | AND ORDER |
| WALTER BROWN, | ) | |
| | ) | |
| | ) | |
| DEFENDANT. | ) | |

On December 15, 2022, an indictment issued charging defendant Walter Brown ("Brown")

with one count of being a felon in possession of a firearm and ammunition, in violation of 18

U.S.C. §§ 922(g)(1) and 924(a)(2). (Doc. No. 1 (Indictment).) Specifically, the indictment

provides that Brown, having previously been convicted of drug trafficking in state court, possessed

a Glock, model 17 Gen5, 9mm caliber, semiautomatic pistol and ammunition. (*Id*.)

Brown now moves to dismiss the felon-in-possession charge. (Doc. No. 26 (Motion).)

Relying on the Supreme Court's recent decision in *New York State Riffle & Pistol Ass'n, Inc. v.*

*Bruen*, 597 U.S. __, 142 S. Ct. 2111, 213 L. Ed. 2d 387 (2022), Brown argues that the indictment

should be dismissed because the charged conduct—possessing a firearm and ammunition after

having been convicted of a felony—is presumptively protected by the Second Amendment, and

plaintiff United States of America (the "government") cannot rebut the presumption. (*Id*. at 1.[1])

---

[1] All page number references herein are to the consecutive page numbers applied to each individual document by the Court's electronic filing system.

The government opposes the motion. (Doc. No. 27 (Response).) For the reasons that follow, as well as the reasons sets forth in the government's response, the motion to dismiss is DENIED.

## I.      STANDARD OF REVIEW

Rule 12(b)(3)(B)(v) of the Federal Rules of Criminal Procedure provides that a defendant can move to dismiss an indictment for failing to state an offense. An indictment properly charges a criminal offense if it "first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." *Hamling v. United States*, 418 U.S. 87, 117, 94 S. Ct. 2887, 41 L. Ed. 2d 590 (1974). When evaluating the content of the indictment, a court must take the allegations in it as true. *United States v. Lee*, 919 F.3d 340, 349 (6th Cir. 2019) (quotation marks and citation omitted).

## II.     DISCUSSION

The Second Amendment provides that "[a] well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II. In *District of Columbia v. Heller*, 554 U.S. 570, 635, 128 S. Ct. 2783, 171 L. Ed. 2d 637 (2008), the Supreme Court held that the Second Amendment confers a right on "law-abiding, responsible citizens" to keep and bear arms regardless of military service. Importantly, however, the Court noted that the right was not absolute, cautioning that "nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons[.]" *Id*. at 626 (recognizing that the Second Amendment right to keep and bear arms "is not unlimited").

The Supreme Court followed its ruling in *Heller* two years later with *McDonald v. City of*

*Chicago*, 561 U.S. 742, 130 S. Ct. 2020, 177 L. Ed. 2d 894 (2010). In *McDonald*, a plurality of the Court found that the Second Amendment right to possess handguns for self-defense was incorporated by the Due Process Clause of the Fourteenth Amendment and applies equally to the states. *Id*. at 791. Echoing its ruling in *Heller*, however, the Court stressed that "the right to keep and bear arms is not 'a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose.'" *Id*. at 786 (quoting *Heller*, 554 U.S. at 626). With respect to restrictions on the right of convicted felons to possess firearms, the Court reiterated that it "made it clear in *Heller* that [the Court's] holding did not 'cast doubt on such longstanding regulatory measures as 'prohibitions on the possession of firearms by felons and the mentally ill . . . .' We repeat those assurances here." *Id*. (quoting *Heller*, 554 U.S. at 626–27).

Relying on *Heller* and *McDonald*, the Sixth Circuit has consistently held that § 922(g)(1) comports with the Second Amendment, stating that "'prohibitions on felon possession of firearms do not violate the Second Amendment,' and 'Congress's prohibition on felon possession of firearms is constitutional.'" *United States v. Whisnant*, 391 F. App'x 426, 430 (6th Cir. 2010) (quoting *United States v. Carey*, 602 F.3d 738, 741 (6th Cir. 2010) (further citations omitted)); *see United States v. Greeno*, 679 F.3d 510, 517 (6th Cir. 2012) (noting that the right to keep and bear arms is not without its limitations and further noting that the Sixth Circuit has consistently relied on *Heller* "to reject Second Amendment challenges to federal felon-in-possession of a firearm convictions and related expungement exceptions" (collecting cases)), *abrogated in part as discussed infra*, *Bruen*, 142 S. Ct. at 2127.

In *Greeno*, the Sixth Circuit joined several other circuits in adopting a two-pronged approach to considering Second Amendment challenges to federal statutes. "Under the first prong,

the court ask[ed] whether the challenged law burdens conduct that falls within the scope of the Second Amendment, as historically understood." *Id*. at 518 (citing *United States v. Chester*, 628 F.3d 673, 680 (4th Cir. 2010)). If the conduct fell outside the protections of the Second Amendment, the inquiry stopped and the "law [wa]s not subject to further Second Amendment review." *Id*. (quoting *Ezell v. City of Chicago*, 651 F.3d 684, 702–03 (7th Cir. 2011)). If the government could not demonstrate conclusively that the law was beyond the amendment's protections, the second inquiry focused on the "strength of the government's justification for restricting or regulating the exercise of Second Amendment rights." *Id*. (quotation marks and citation omitted).

Then, in 2022, the Supreme Court issued its decision in *Bruen*, which altered the framework a court must follow when reviewing Second Amendment challenges. Specifically, the Court rejected the two-pronged approach adopted by the Sixth in *Greeno* and by several other circuits, concluding that the approach was "one [prong] too many." *Bruen*, 142 S. Ct. at 2127. Specifically, the Court explained that while the first prong was consistent with *Heller*, the second prong's application of measured scrutiny was inconsistent with *Heller* and *McDonald*. *Id*. Accordingly, the Court concluded that to survive a Second Amendment challenge to a federal statute, the government must show that any regulation on gun ownership is "consistent with this Nation's historical tradition of firearm regulation." *Id*. at 2126.

As it did in *Heller*, the Supreme Court emphasized that the Second Amendment protects the right of "ordinary, law-abiding citizens" to "carry a handgun for self-defense outside the home." *Id*. at 2122. But also as it did *Heller*, the Court in *Bruen* also recognized that the "right secured by the Second Amendment is not unlimited." *Id*. at 2128 (citation and quotation marks

omitted). Indeed, in *Bruen*, five justices recognized that the decision did not "'cast doubt on longstanding prohibitions on the possession of firearms by felons.'" *Id.* at 2162 (quoting *Heller*, 544 U.S. at 626–27) (Kavanaugh J., concurring and joined by Roberts, C.J.). In dissent, Justice Breyer, joined by Justices Sotomayor and Kagan, agreed that such statutes were not in doubt. *See id.* at 2189 (Breyer, J., dissenting).

In the year since *Bruen* was decided, federal criminal defendants and prisoners across the country have attempted to leverage the ruling in *Bruen* to contest their indictments charging, or convictions for, being a felon in possession of firearms and/or ammunition under § 922(g)(1). The vast majority of courts to address the issue, including this and other courts within the Sixth Circuit, have concluded that the ruling in *Bruen* did not "overturn, re-write, or alter" the Supreme Court's prior determinations that restrictions on the right of convicted felons to possess weapons are constitutional. *See United States v. Haywood*, No. 22-20417, 2023 WL 3669333, at *1–2 (E.D. Mich. May 25, 2023) (citing *Heller*, 554 U.S. at 625–26 and collecting lower court cases); *see, e.g., United States v. Miller,* No. 1:22-cr-645, 2023 WL 6065116, at *3–4 (N.D. Ohio Sept. 18, 2023) (refusing to declare § 922(g)(1) unconstitutional); *United States v. Taylor*, No. 1:23-cr-289, 2023 WL 5957107, at *3 (N.D. Ohio Sept. 12, 2023) (denying motion to dismiss indictment charging violation of § 922(g)(1) premised on *Bruen*); *United States v. Bluer*, No. 22-cr-20557, 2023 WL 3309844, at *6 (E.D. Mich. May 8, 2023) (recognizing the "overwhelming consensus" that "*Bruen* is no barrier to a § 922(g)(1) prosecution"); *United States v. Davis*, No. 5:19-cr-159, 2023 WL 373172, at *2 (E.D. Ky. Jan. 24, 2023) ("*Bruen* did nothing to change the prohibition on the possession of firearms by felons, which remains well-settled law." (collecting cases)); *see also United States v. Norman*, No. 1:21-cr-383, 2023 WL 6290690, at *3 (N.D. Ohio Sept. 27, 2023)

(rejecting Second Amendment challenge to § 922(g)(1) conviction under *Bruen* in the context of a motion for compassionate release).

The Court is only aware of two cases that have, following *Bruen*, enjoined enforcement of § 922(g)(1). In *Range v. Att'y Gen. United States of Am.*, 69 F.4th 96, 106 (3d Cir. 2023), a majority of the Third Circuit sitting en banc found that the government had failed to show that the Nation's historical tradition of firearms regulation supported depriving the petitioner, an individual with a prior felony conviction, of his right to possess a firearm. A similar decision was reached by a district court in the Southern District of Mississippi. *See United States. Bullock*, No. 3:18-cr-165, 2023 WL 4232309, at *31 (S.D. Miss. June 28, 2023).[2]

Nevertheless, the clear weight of authority—including the Eighth Circuit's recent decision in *United States v. Jackson*, 69 F.4th 495, 501–02 (8th Cir. 2023) (concluding that, in light of the Supreme Court's assurances in *Heller* and *McDonald*, felon-in-possession bans are presumptively lawful)—remains in favor of enforcing § 922(g)(1). *See United States v. Nelson*, No. 2:22-cr-20512, 2023 WL 4249367, at *5 (E.D. Mich. June 29, 2023) (collecting cases). Brown has failed to provide any compelling reason to deviate from binding Sixth Circuit precedent and the broad

---

[2] The Court does not understand Brown to be asserting an "as applied" challenge to § 922(g)(1), as was at issue in *Range* and *Bullock*. In *Range*, for example, the Third Circuit found that the government "has not shown that the Nation's tradition of firearms regulation supports depriving [the defendant] of his Second Amendment right to possess a firearm." *Range*, 69 F.4th at 106. But the court emphasized that its decision was "a narrow one[,]" applying to the constitutionality of § 922(g)(1) "only as applied to" the defendant "given his violation of" a statute that prohibits making false statement to obtain food stamps. *Id.* Unlike the defendant in *Range*, Brown was convicted of an inherently dangerous crime; namely, drug trafficking. *See United States v. Stone*, 608 F.3d 939, 947 n.6 (6th Cir. 2010) ("[D]rug trafficking is a serious offense that, in itself, poses a danger to the community." (quotation marks and citations omitted)). While the Court believes that *Range* and *Bullock* were wrongly decided, they are also distinguished on the ground that they were limited to "as applied" challenges that Brown is not making, and, in any event, would not be successful, given the seriously dangerous nature of Brown's prior felony conduct. *See, e.g., Taylor*, 2023 WL 5957107, at *3 (distinguishing *Range* on grounds that the defendant was convicted of aggravated robbery, having a weapon while under a disability, and drug trafficking, "none [of which] can be fairly characterized as nonviolent or otherwise analogous to making a false statement to obtain food stamps"); *United States v. O'Connor*, No. 03-cr-134, 2023 WL 5542087, at *4 (W.D. Pa. Aug. 29, 2023) (distinguishing *Range* and *Bullock* on similar grounds).

consensus of courts that have upheld the constitutionality of § 922(g)(1) in the wake of *Bruen* in favor of two outlier out-of-circuit cases.

For example, Brown argues that, as a United States citizen and a "lifelong member of the national community," he is part of "the people" referenced in the Second Amendment. (Doc. No. 26, at 5.) As the government observes in its opposition brief, this issue is certainly open to debate. (Doc. No. 27, at 32.) In *Bruen*, the Supreme Court repeatedly described the Second Amendment's application to "law-abiding" citizens. *See Bruen*, 142 S. Ct. at 2122, 2125, 2131, 2133–34, 2138, 2150, 2156. And the Supreme Court in *Bruen* affirmed *Heller* and *McDonald*, noting that it "recognized that the Second and Fourteenth Amendments protect the right of an ordinary, *law-abiding citizen* to possess a handgun in the home for self-defense . . . consistent with *Heller* and *McDonald*[.]" *Id* at 2122 (emphasis added). As a convicted felon, Brown cannot be characterized as a "law-abiding" citizen and arguably has no claim to the rights secured by the Second Amendment. *See Tyler v. Hillsdale Cnty. Sheriff's Dep't*, 837 F.3d 678, 708 (6th Cir. 2016) (noting that felons are an "exception" to the class of "American citizens" who have "a fundamental right . . . to possess a gun") (Sutton, J., concurring in most of the judgment); *but see Range*, 69 F.4th at 101–03.

But, in any event, Congress's ability to disarm felons does not depend on felons not being part of "the people." The Bill of Rights secures rights "inherited from our English ancestors, and which had, from time immemorial, been subject to certain well-recognized exceptions[.]" *Robertson v. Baldwin*, 165 U.S. 275, 281, 17 S. Ct. 326, 41 L. Ed. 2d 715 (1897). With respect to the Second Amendment, these "exceptions" have included prohibiting the ownership of particularly dangerous weapons, such as short-barreled shotguns; forbidding the carrying of

firearms in sensitive places, such as schools; and forbidding the possession of firearms by dangerous individuals, such as felons and the mentally ill. *Heller*, 554 U.S. at 625–26. Indeed, the Supreme Court has plainly and consistently recognized that "history support[s] the constitutionality of [] laws . . . prohibiting [firearms] possession by felons and other dangerous individuals." *New York State Rife & Pistol Ass'n, Inc. v. City of New York*, 590 U.S. __, 140 S. Ct. 1525, 1540–41, 206 L. Ed. 2d 798 (2020) (Alito, J., dissenting).

Still, Brown notes that the constitutional founders did not adopt felon-disarmament statutes. (Doc. No. 26, at 4.) He complains that barring evidence that the founders themselves imposed such restrictions on convicted felons, there can be no historical tradition of regulations that are "distinctly similar" to those imposed by § 922(g)(1) such that the statute may pass constitutional muster. (*Id*. (quoting *Bruen*, 142 S. Ct. at 2131).) But the very case upon which Brown now relies—*Bruen*—makes clear that a modern firearm regulation can comply with the Second Amendment even if it lacks "a historical *twin*." *Bruen*, 142 S. Ct. 2133 (emphasis in original). Rather, when the government defends a modern law by invoking historical statutes, it need only cite a "historical *analogue*[.]" *Id.* (emphasis in original). In fact, on a related note, the Supreme Court has dismissed, as "bordering on the frivolous," the argument that the Second Amendment protects "only those arms in existence in the 18th century[.]" *Heller*, 554 U.S. at 582.

As the government has detailed in its opposition, history is replete with analogous restrictions on firearms possession by convicted felons and others who are not law-abiding, responsible citizens, dating back to the 1600s and including restrictions imposed from the founding era of this country to the present. (Doc. No. 27, at 13–26.) It is not necessary to restate that history here, nor is it necessary for this Court to find in the first instance that historical analogues support

the restrictions set forth in § 922(g)(1). The Supreme Court has already concluded that such historical precedent exists. *See Heller*, 554 U.S. at 626–27; *McDonald*, 561 U.S. at 786.

Suffice it to say, "the Supreme Court has been *consistently* clear that its Second Amendment jurisprudence has cast no doubt on the validity of the prohibitions on the possession of firearms by convicted felons." *United States v. Jordan*, No. 1:23-cr-159, 2023 WL 4267602, at *2 (N.D. Ohio June 29, 2023) (citing *Heller* and *McDonald*). There is nothing about the decision in *Bruen*, which adopted the reasoning of *Heller* and *McDonald*, that casts any doubt on this conclusion. This Court is bound by Supreme Court and Sixth Circuit precedent finding restrictions on gun ownership by convicted felons, such as those found in § 922(g)(1), constitutional. Accordingly, the indictment properly states a violation of federal statutory law.

### III.    CONCLUSION

For the reasons set forth above, the Court denies Brown's motion to dismiss the indictment.

**IT IS SO ORDERED**.

Dated: November 7, 2023

**HONORABLE SARA LIOI**
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**

9